[Cite as *State ex rel. Dattilio v. Indus. Comm.*, 2025-Ohio-182.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Jamie Dattilio, | : | |
| Relator, | : | |
| v. | : | No. 22AP-421 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on January 23, 2025

**On brief:** *Patrick J. Moro* and *Joseph A. Moro*, for relator.

**On brief:** *Dave Yost,* Attorney General, and *Denise A. Gary,* for respondent Industrial Commission of Ohio.

**On brief:** *ICE Miller LLP*, *Jennifer M. McDaniel*, *Marisa Bartlette Willis*, and *Amy E. Flowers*, for respondent Big Lots, Inc.

IN MANDAMUS

MENTEL, J.

{¶ 1} Relator, Jamie Dattilio, filed a complaint in mandamus on July 13, 2022, alleging that respondent, the Industrial Commission of Ohio, abused its discretion when it determined that she had engaged in fraud by engaging in work while receiving temporary total disability payments and ordered repayment under R.C. 4123.511(K).

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. The magistrate recommends that we deny relator's request for a writ of mandamus after concluding that some evidence in the record supports respondent's finding of fraud.

{¶ 3} Relator filed no objection to the magistrate's decision. "If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Civ.R. 53(D)(4)(c). Our review of the magistrate's decision reveals no error of law or other evident defect. *See, e.g.*, *State ex rel. Alleyne v. Indus. Comm.*, 10th Dist. No. 03AP-811, 2004-Ohio-4223 (adopting the magistrate's decision where no objections filed). We agree with the magistrate's conclusion that some evidence supported the finding of fraud. Accordingly, we adopt the decision of the magistrate in full and deny relator's request for a writ of mandamus.

*Writ of mandamus denied.*

JAMISON, P.J. and LUPER SCHUSTER, J., concur.

———————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Jamie Dattilio, | : | |
| Relator, | : | |
| v. | : | No. 22AP-421 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on February 29, 2024

*Patrick J. Moro* and *Joseph A. Moro*, for relator.

*Dave Yost,* Attorney General, and *Denise A. Gary,* for respondent Industrial Commission of Ohio.

*ICE Miller LLP*, *Jennifer M. McDaniel*, *Marisa Bartlette Willis*, and *Amy E. Flowers*, for respondent Big Lots, Inc.

IN MANDAMUS

**{¶ 4}** Relator, Jamie Dattilio ("claimant"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its June 2, 2022, order that found she was not entitled to temporary total disability ("TTD") compensation from May 31, 2020, through December 20, 2020, and ordered an overpayment of TTD compensation for this period based on a finding of fraud.

Findings of Fact:

{¶ 5}   1. On August 5, 2019, claimant sustained an injury in the course of and arising out of her employment with respondent Big Lots, Inc. ("employer"). Her workers' compensation claim was allowed for the following conditions: strain of muscle; fascia and tendon of lower back; and L5-S1 disc protrusion.

{¶ 6}   2. Claimant was granted salary continuation and then TTD compensation from August 11, 2019, through December 20, 2020, when her physician of record found she had reached maximum medical improvement.

{¶ 7}   3. Claimant signed a July 2, 2020, C-84 form and checked "no" when asked whether she was working in any capacity, including full or part-time, self-employment, income-producing hobbies, and commission work or unpaid activities that are not minimal and directly earn income for someone else.

{¶ 8}   4. On June 24, 2020, while receiving TTD compensation, claimant sent an email to the employer's compensation manager. The email indicated an email address for claimant associated with California Palms Addiction and Recovery Campus ("California Palms") and designated her as a chemical dependency counselor assistant. The email also provided the address for California Palms, a 1-800 number and direct phone number for claimant, a fax number, and claimant's California Palms email address. This email prompted an investigation into claimant's work activities.

{¶ 9}   5. Claimant testified that California Palms is an addiction rehabilitation center owned by her then boyfriend, Sebastian Rucci, and she lived at the center with Rucci.

{¶ 10}  6. During the investigation conducted by Special Agent Perry Phiel for the Ohio Bureau of Workers' Compensation ("BWC"), Ann Brandt, the clinical director for California Palms from December 2019 to April 2020, stated in a March 23, 2021, interview and statement that claimant did a little bit of everything, including scheduling, transportation, finance, case management, billing, and some group-counseling work. She said that claimant was an employee at California Palms, worked every day, lived at the facility, and had access to all of California Palms' computers, books, safe, and credit cards. Special Agent Phiel was informed in April 2021 by the Ohio Pharmacy Board that California Palms and Rucci were being investigated for insurance and Medicare fraud.

{¶ 11} 7. Special Agent Phiel interviewed Kelly Gargas, a nurse at California Palms from May 2020 through September 2020, who stated that claimant worked as administrative staff, did new-hire orientation, provided her with her direct deposit authorization, did bookkeeping and payroll, worked as the manager while Rucci was sick, worked as a counselor prior to Gargas's hire, worked on most days that Gargas worked (Monday through Friday), and was the person who terminated her employment there.

{¶ 12} 8. Special Agent Phiel testified at the commission hearings that, in addition to the aforementioned allegations made by Gargas and Brandt, the investigation revealed that claimant began working for California Palms on January 1, 2020; worked as a receptionist at times; wrote checks for California Palms' checking account to vendors and for payroll; and collected tax documents and time sheets from employees. Special Agent Phiel also testified that claimant performed income-generating functions at California Palms, including client billing, new-client intake, and new-client insurance verification. She also worked as a dependency counselor, led group counseling sessions, and lived and worked at the facility. He also testified that relator was paid $2,000 via an October 7, 2020, check drawn from California Palms' bank account, and she signed 58 checks on behalf of California Palms from August 11, 2020, through October 30, 2020, which were for payments to medical providers and vendors and wages to employees. She also lived at the facility rent free.

{¶ 13} 9. On November 16, 2021, the employer filed a C-86 motion requesting the commission find that claimant committed fraud and declare an overpayment of TTD compensation for the period beginning January 1, 2020. The employer's claim of fraud was based upon the allegation that claimant was engaging in work for California Palms while receiving TTD compensation.

{¶ 14} 10. In a January 28, 2022, affidavit, Sebastian Rucci averred the following, in pertinent part: he is executive director of the California Palms; he lives on site; he met claimant on October 7, 2019, and has been in a romantic relationship with her since then; he and claimant were engaged in November 2020; claimant lives with him in the facility; claimant is not an employee of California Palms; claimant assists with various tasks as she sees the needs; claimant helped him when he was sick in 2020; California Palms has many volunteers; claimant has volunteered for the past 28 months, assisting with the

front office and participating in hiring interviews; claimant's volunteering is no different than the other volunteers and is not paid; claimant received a $2,000 check from California Palms for reimbursement of supplies that she purchased for clients for art classes; and claimant signed about five dozen checks when he was sick.

{¶ 15} 11. On November 16, 2021, the employer filed a C-86 motion requesting that the commission declare claimant committed fraud by engaging in work and declare an overpayment of all TTD compensation improperly paid.

{¶ 16} 12. The matter was heard before a district hearing officer ("DHO"), and on February 3, 2022, the DHO issued an order, finding the following: (1) the November 16, 2021, C-86 motion filed by the employer is granted; (2) claimant received TTD compensation from August 25, 2019, to December 20, 2020, but claimant was working for California Palms from May 31, 2020, to November 2020, and, therefore, was not entitled to TTD compensation from May 31, 2020, to December 20, 2020; (3) claimant was overpaid TTD compensation for that period; (4) claimant engaged in fraud in obtaining TTD compensation for that period; (5) Gargas indicated in her March 26, 2021, statement that claimant worked as administrative staff and as acting manager while Rucci was sick and did her new-hire orientation and terminated her employment there; (6) claimant testified that she terminated Gargas pursuant to an order from a doctor who worked for California Palms because Gargas did not follow the doctor's instructions; (7) the DHO relied on Brandt's March 23, 2021, statement; (8) claimant signed her August 21, 2019, first report of injury and her July 2, 2020, C-84 request for TTD compensation that indicated claimant has not worked in any capacity since August 5, 2019, and her signature is under the fraud warning; (9) claimant's failure was material to the payment of TTD compensation; (10) claimant's actions were made with such utter disregard and recklessness that knowledge of such falsity may be inferred; claimant knew the information on the C-84 form was false and she knew she was not entitled to TTD benefits; (11) claimant signed and submitted the C-84 form with the intent to mislead the employer to rely upon the statements therein; (12) the employer relied upon claimant's completion of the C-84 and MEDCO-14 forms; (13) as a proximate result of the employer's reliance on claimant's C-84 and MEDCO-14s, TTD compensation was improperly paid; and (14) pursuant to *State ex rel. Ellis v. Indus. Comm.*, 92 Ohio St.3d 508 (2001), the

Supreme Court of Ohio held that the commission does not abuse its discretion when declaring an overpayment over a period of compensation received by an injured worker during an extended period, despite that fact that there was only evidence establishing fraudulent conduct for only a portion of that time. Both claimant and the employer appealed.

{¶ 17} 13. The matter was heard before a staff hearing officer ("SHO"), and on June 2, 2022, the SHO issued an order, finding the following: (1) the order of the DHO is vacated; (2) claimant received TTD compensation from October 7, 2019, through December 20, 2020; (3) there is insufficient evidence to establish that claimant was working from October 7, 2019, through May 30, 2020, or from January 1, 2020, through May 30, 2020; (4) there is sufficient evidence to establish that claimant was working from May 31, 2020, for California Palms; (5) Gargas indicated in her March 26, 2021, statement that claimant conducted her new-hire orientation and terminated her employment; (6) the SHO is using the last day of the month claimant hired Gargas as the first day that claimant performed work activity; (7) claimant signed 58 checks on behalf of California Palms from August 11, 2020, through October 30, 2020, which included paychecks to employees and payments to medical providers and vendors; (8) claimant negotiated an October 7, 2020, check from the California Palms bank account, made payable to claimant for $2,000, which claimant testified was for reimbursement for things that she had purchased for the facility; (9) claimant's LinkedIn account listed her as a volunteer and administrator/CDCA; (10) claimant's National Provider Identifier ("NPI") profile indicated she was a counselor for addiction and substance-use disorder; (11) claimant was assigned an NPI number in February 2020 with her medical specialization listed as counselor for addiction and substance-use disorder at the same address at California Palms; (12) claimant is not entitled to TTD compensation from May 31, 2020, through December 20, 2020, because claimant worked for California Palms during this period, and she was overpaid during this period due to fraudulent activity; (13) the 6 elements of fraud have been established: (a) there was a duty to disclose and the concealment of the fact that claimant was working for California Palms during the period in question; (b) claimant's failure to disclose her employment at California Palms was material to the transaction; (c) claimant's actions were undertaken falsely in that she knew she was

working and of her employment status, and she signed C-84 requests for compensation that included a fraud warning and definition of "work"; (d) claimant intended to mislead the employer into relying on the concealment of fact that she was working for California Palms; (e) the employer justifiably relied upon claimant's signature on the C-84 request indicating that claimant was not working in any capacity; and (f) the resulting injury proximately caused by the employer's reliance on claimant's C-84 request was that the employer paid claimant TTD compensation; (14) *State ex rel. McBee v. Indus. Comm.*, 132 Ohio St.3d 209, 2012-Ohio-2678, is applicable and holds that unpaid activities that are not minimal and directly generate income for a separate entity may be considered work for purposes of TTD compensation eligibility; (15) claimant's activities for California Palms constituted work because (a) they were consistent and ongoing; (b) they consisted of administrative, customer service, and human resources duties that directly generated income and were necessary for the operation of California Palms; (c) claimant terminated an employee and purchased items for the facility; (d) claimant conducted the new-hire orientation for an employee, wrote checks for California Palms, and was registered as a counselor for California Palms; and (e) claimant actively pursued her career as a counselor by obtaining CDCA certification and being listed as a counselor for California Palms; and (16) the SHO relied upon the following evidence: (a) the March 26, 2021, statement of Gargas; (b) the October 6, 2021, self-insuring employer indemnity report; (c) the July 2, 2020, C-84 request for TTD compensation; (d) the October 16, 2020, self-insuring employer online investigation report; (e) the 58 checks written by claimant from the California Palms account; and (f) the $2,000 check from California Palms to claimant. Claimant appealed the order.

{¶ 18} 14. On June 22, 2022, the commission refused claimant's appeal.

{¶ 19} 15. On July 13, 2022, claimant filed a petition for writ of mandamus.

Conclusions of Law and Discussion:

{¶ 20} The magistrate recommends that this court deny claimant's writ of mandamus.

{¶ 21} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent

to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 22} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 23} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost when a claimant's injury prevents a return to the former position of employment. *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982). TTD compensation is prohibited for one who has returned to work. R.C. 4123.56(A). "Work" generally means labor exchanged for pay. *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, ¶ 19. Remuneration can take the form of a cash payment or a cash-like benefit. See *State ex rel. Alesci v. Indus. Comm.*, 97 Ohio St.3d 210, 2002-Ohio-5932, ¶ 20. Activities that are not medically inconsistent with the inability to return to the former position of employment bar TTD compensation only when a claimant is remunerated for them. *State ex rel. Ford Motor Co. v. Indus. Comm.*, 98 Ohio St.3d 20, 2002-Ohio-7038, ¶ 23.

{¶ 24} The Supreme Court of Ohio has recognized an exception to the general principle above for "unpaid activities that directly generate income for a separate entity[,]" which, in some situations, may be considered work for purposes of TTD compensation eligibility. *See McBee* at ¶ 4. However, if the claimant's activities are minimal and relate only indirectly to generating income, they may not be considered work that would disqualify a claimant from receiving TTD compensation. *Ford* at ¶ 24. Furthermore, the performance of tasks that a person would normally be paid to do constitutes "work." *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 21. "Work is 'sustained' if it consists of an ongoing pattern of activity." *State ex rel. Bonnlander v. Hamon*, 150 Ohio St.3d 567, 2017-Ohio-4003, ¶ 15. "[W]ork need

not be regular or daily" to qualify as sustained. *Id.* "[I]ntermittent and occasional" or "part-time" work may qualify. *Id.*

{¶ 25} The prima facie elements of fraud are: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55 (1987), citing *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69 (1986), paragraph two of the syllabus, and *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167 (1984).

{¶ 26} In the present case, claimant argues that there was not some evidence to support the SHO's order that found she had engaged in "work," asserting the following: (1) there was never any form of compensation paid to claimant for any alleged activities the commission claims constituted fraud; (2) the commission failed to mention that, at the time of the alleged fraud, claimant lived on the California Palms premises with her then boyfriend, Rucci, and the SHO referenced the amount of time claimant spent at the facility without taking this into consideration; (3) the case the SHO relied upon, *McBee*, is not analogous to the present case, and the present case is more like *Ford*; and (4) there is no evidence that relator generated income for California Palms.

{¶ 27} Claimant generally addresses the arguments together and relies upon much of the same facts. Claimant asserts that she lived at the location of the business; her then boyfriend was the owner/operator of California Palms; she spent 90 percent of her time there and occasionally helped with odds and ends around the premises; there was a period when her boyfriend was ill and she assisted him with signing checks and performing administrative functions unrelated to the nature of the business; and the SHO only generically referred to the allegedly fraudulent conduct and stated that it helped produce income for the employer while only citing the amount of time she spent there.

{¶ 28} Claimant's arguments are not persuasive. The evidence was clear and conclusive that claimant was working from May 31, 2020, to December 20, 2020, for California Palms, and the magistrate relies upon the same evidence cited by the SHO to

support the conclusion that claimant was engaging in work at California Palms, as follows: Gargas indicated in her March 26, 2021, statement that claimant conducted her new hire orientation and terminated her employment; claimant signed 58 checks on behalf of California Palms from August 11, 2020, through October 30, 2020, which included paychecks to employees and payments to medical providers and vendors; claimant negotiated an October 7, 2020, check from the California Palms bank account, made payable to claimant for $2,000, which claimant testified was for reimbursement for things that she had purchased for the facility; claimant's LinkedIn account listed her as a volunteer and administrator/CDCA; claimant's NPI profile indicated she was a counselor for addiction and substance-use disorder; claimant was assigned an NPI number in February 2020 with her medical specialization listed as counselor for addiction and substance-use disorder at the same address as California Palms; claimant's unpaid activities were not minimal, were consistent and ongoing, and directly generated income for California Palms; claimant's work consisted of administrative, customer service, and human resources duties that directly generated income and were necessary for the operation of California Palms; claimant terminated an employee and purchased items for the facility; claimant conducted the new-hire orientation for an employee, wrote checks for California Palms, and was registered as a counselor for California Palms; and claimant actively pursued her career as a counselor by obtaining CDCA certification and being listed as a counselor for California Palms.

{¶ 29} As for claimant's specific arguments, claimant's first argument is without merit. Whether claimant was ever paid compensation for any of the work activities is not a dispositive factor. As explained above, although "work" generally means labor exchanged for pay, unpaid activities that directly generate income for a separate entity may also be considered work for purposes of TTD compensation eligibility. *See McBee* at ¶ 4. Thus, that California Palms did not compensate claimant for the activities cited by the SHO, alone, does not prevent a finding that the activities constituted work. Furthermore, although the magistrate cannot locate where in the SHO's order that the SHO referenced the amount of time claimant spent at the facility, as claimant contends, the SHO was clearly aware that claimant lived at California Palms, as the investigative materials, testimony, and other evidence in the record is replete with acknowledgements

of such. Absent evidence to the contrary, any findings by the SHO that involved claimant's presence at the facility were undoubtedly made with the knowledge that claimant lived at the facility with her then boyfriend. Therefore, these arguments are without merit.

{¶ 30} In addition, the magistrate finds no error with regard to the SHO's reliance upon *McBee* to find claimant's activities constituted work, and *Ford* is not analogous to the present case. In *McBee*, the claimant, while receiving TTD compensation, performed unpaid activities for his wife's business. The commission found that TTD compensation should not have been paid while the claimant worked for his wife's business, and the claimant committed fraud. In mandamus, this court upheld the finding that the claimant had worked while receiving TTD compensation but overturned the finding of fraud, determining that there was no evidence that the claimant knew his unpaid activities for his wife's business constituted work for purposes of TTD compensation eligibility. The Supreme Court of Ohio affirmed, finding that claimant did not engage in fraud because the evidence did not show that the claimant was aware that his unpaid activities would be considered work that precluded TTD compensation, and he did not knowingly mislead anyone, pointing out that the documents that claimant used to apply for ongoing TTD compensation did not define "work" or indicate that unpaid activities could sometimes be classified as work. However, the court agreed that the claimant's activities for his wife's company were not minimal, directly generated income, and were consistent and ongoing; thus, his activities, though unpaid, constituted work, precluding TTD compensation.

{¶ 31} In *McBee*, the court cited *Ford*, in which the claimant was receiving TTD compensation while working for his own lawncare business. Based upon evidence showing that after his industrial injury, the claimant hired workers to do the lawn care, and his participation was limited to signing paychecks, fueling lawnmowers weekly, and driving the mowers onto a truck, while his girlfriend performed all clerical work, the court found there was no showing that the claimant did any of the landscaping work while receiving TTD compensation. The court explained that the claimant's activities did not amount to "work" so as to disqualify him from TTD compensation, as the claimant's activities did not, in and of themselves, generate income and produced money only secondarily by doing activities that allowed his workers to perform income-generating

tasks, and his activities were truly minimal and only indirectly related to generating income.

{¶ 32} In the present case, claimant's activities at California Palms were substantial, consistent, and ongoing; thus, claimant's activities, though unpaid, constituted work, precluding TTD compensation. Here, claimant conducted a new-hire orientation; terminated an employee; signed 58 paychecks, medical-provider checks, and vendor checks on behalf of California Palms; purchased supplies for the facility; and negotiated a check from the California Palms bank account payable to claimant for reimbursement for purchases for the facility. Although there was no evidence that claimant was paid for these consistent, ongoing, and substantial activities, they were job duties that California Palms otherwise would have had to pay an employee to perform. This case is unlike *Ford*, in that claimant's work here must be viewed from the perspective of an employee, not a business owner, as in *Ford*. Although if claimant were performing these tasks as the business owner, claimant's activities for California Palms could at least arguably be viewed as secondary to direct income generation for the primary business of an addiction rehabilitation center, claimant's activities here are actual work for which a typical employee would receive income paid by a business owner. *See, e.g. State ex rel. Dunlap v. Indus. Comm.*, 10th Dist. No. 16AP-101, 2016-Ohio-8131, ¶ 11 (the claimant's actions were that expected of a typical employee). Here, claimant does not stand in the shoes of the business owner in *Ford* who acted in a supervisory capacity and employed workers to perform the work, but in the shoes of the workers who were found to be performing the actual work to produce income for the lawncare business, including the owner's girlfriend who performed all clerical work. Claimant's jobs were not passive managerial tasks, as in *Ford*, but the type of active work normal employees would perform. *See, e.g. Dunlap* at ¶ 11 (the claimant was greater than a mere presence; her activities were not minimal, but were demanding, more than passive, and broad in nature). Because California Palms did not have to pay other employees to perform the administrative, customer service, human-resources, purchasing, and clerical jobs that claimant was consistently performing in a role that mirrored that of a typical employee, claimant was clearly carrying out work that directly helped to produce income for California Palms' main business of addiction rehabilitation. Thus, claimant's argument

that there was no evidence that her activities generated income for California Palms is without merit. For these reasons, the magistrate finds there was some evidence to support the commission's finding that claimant engaged in "work" while receiving TTD compensation.

{¶ 33} Finally, the magistrate notes that although claimant mentions the commission's finding of fraud in her brief, claimant's focus in her brief was on whether her activities constituted "work," and there is little substantive argument that the SHO's finding of fraud was otherwise in error. Claimant raises no clear arguments related to the SHO's analysis of the six elements of fraud. Insofar as claimant may be raising error with respect to the independent fraud finding as well, the magistrate finds that the SHO's determination and analysis of the elements of fraud were supported by some evidence, as expressed in the SHO's order. Importantly, claimant admitted in her testimony before the DHO that she signed the July 2, 2020, request for TTD compensation C-84 form and marked "no" in Section 3, which affirmed that she was not working in any capacity, including full or part-time, was not self-employed, and did not participate in income-producing hobbies, commission work, or unpaid activities that were not minimal and directly earned income for someone else. In addition, directly above the signature line in the C-84 form is an attestation that claimant understood she was not permitted to work while receiving TTD compensation. Therefore, claimant was aware of the definition of "work." Notably, the present case differs from *McBee*, in which the court found the claimant did not engage in fraud because the evidence did not show that the claimant was aware that his unpaid activities would be considered work that precluded TTD compensation, and he did not knowingly mislead anyone, pointing out that the documents that claimant used to apply for TTD compensation did not define "work" or indicate that unpaid activities could sometimes be classified as work. Here, however, the C-84 claimant signed included additional language defining "work" that was absent from the documents in use at the time of *McBee*. This court in *Dunlap* explained the difference between the older C-84 forms, which only asked if the injured worker had worked in any capacity during the period of disability, and the modified C-84 forms, which ask if the injured worker was working in unpaid activities that were not minimal and directly earned income for someone else. This court found in *Dunlap* that the additional language

provided proof that the claimant had knowledge of the falsity of the representations made to the BWC. For these reasons, the magistrate finds that the SHO's finding of fraud was supported by some evidence.

{¶ 34} Accordingly, it is the magistrate's recommendation that this court should deny claimant's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.