THE STATE EX REL. MCBEE, APPELLEE, *v*. INDUSTRIAL COMMISSION
OF OHIO, APPELLANT, ET AL.
[Cite as *State ex rel. McBee v. Indus. Comm.*,
132 Ohio St.3d 209, 2012-Ohio-2678.]

*Workers' compensation—Temporary total disability compensation—Overpayment declared due to claimant's fraud in working while receiving benefits— "Work" defined—Unpaid activities may constitute work—Fraud declaration overturned—No evidence that claimant knew that unpaid activities could qualify as work.*

(No. 2010-2288—Submitted April 24, 2012—Decided June 19, 2012.)

APPEAL from the Court of Appeals for Franklin County, No. 09AP-239,
2010-Ohio-5547.

_____

**Per Curiam**.

{¶ 1} A claimant cannot receive temporary total disability compensation ("TTC") for any period in which he or she worked. R.C. 4123.56(A). Appellee, Garry K. McBee, received TTC from October 30, 2004, through March 9, 2006. During that time, he also helped his wife with her business, but he was not paid for his services. Appellant Industrial Commission of Ohio learned of these activities, determined that they constituted work, and concluded that TTC should not have been paid. Consistent with those findings, the TTC award was vacated, and an overpayment was declared. In addition, the commission found that McBee had committed fraud by submitting disability paperwork to the commission and the Bureau of Workers' Compensation between October 30, 2004, and March 9, 2006, in which he certified that he was not working.

**{¶ 2}** McBee responded with a complaint in mandamus in the Court of Appeals for Franklin County. The court upheld the finding that McBee had worked while receiving TTC, but it overturned the finding of fraud after concluding that the evidence cited in the commission's order did not prove that McBee knew that his unpaid activities for his wife's company constituted work for purposes of TTC eligibility.

**{¶ 3}** Seeking to reinstate its declaration of fraud, the commission now appeals to this court as a matter of right.

**{¶ 4}** "Work" in this context is generally considered to be labor exchanged for pay. *State ex rel. Griffith v. Indus. Comm.*, 109 Ohio St.3d 479, 2006-Ohio-2992, 849 N.E.2d 28, ¶ 10. There is, however, an important exception: unpaid activities that directly generate income for a separate entity can, in some situations, be considered work for purposes of TTC eligibility. This principle can be extracted from our holding in *State ex rel. Ford Motor Co. v. Indus. Comm.*, 98 Ohio St.3d 20, 2002-Ohio-7038, 780 N.E.2d 1016.

**{¶ 5}** The employer in *Ford* sought to recoup TTC, arguing that the claimant was improperly receiving compensation while working in his own lawn-care business. Evidence showed that after his industrial injury, the claimant hired workers to do the lawn care, while his participation was limited to signing paychecks, fueling lawnmowers weekly, and driving the mowers onto a truck. There was no showing that claimant did any of the landscaping work while receiving TTC. *Id.* at ¶ 3. All clerical work besides signing checks was performed by the claimant's girlfriend. *Id.* at ¶ 8.

**{¶ 6}** We held that the claimant's activities did not amount to work so as to disqualify him from TTC. "[T]his claimant's activities did not, in and of themselves, generate income; claimant's activities produced money only secondarily, e.g., claimant signed the paychecks that kept *his employees* doing the

tasks that generated income." *Id.* at ¶ 23. His activities were "truly minimal and only indirectly related to generating income." *Id.* at ¶ 24.

**{¶ 7}** It follows, therefore, that activities that are not minimal and that directly generate income for a separate entity may be considered work and may disqualify a claimant from receiving TTC even when the claimant is not paid. The court of appeals adopted its magistrate's conclusion that McBee's activities for his wife's company directly generated income and were consistent and ongoing. Thus, his activities, though unpaid, constituted work, precluding TTC. McBee has not appealed that determination to this court.

**{¶ 8}** We now consider whether McBee engaged in fraud when he received TTC while working. The absence of remuneration factors into this issue as well. Fraud requires a knowing misrepresentation of a material fact. *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55, 514 N.E.2d 709 (1987). McBee received TTC because of his contemporaneous certification that he was not working. For this to qualify as a knowing misrepresentation, however, it must be shown that McBee was aware that his unpaid activities could be considered work. We must determine whether the evidence cited in the commission's order demonstrates such an awareness. We find that it does not.

**{¶ 9}** The documents that McBee used to apply for ongoing TTC advised only that a claimant is "not permitted to work" while receiving TTC. The documents did not define "work," nor did they indicate that unpaid activities could sometimes be classified as work. The commission insists, however, that such knowledge can be inferred from the hearing testimony of McBee and his wife. We disagree.

**{¶ 10}** The commission has substantial leeway to draw inferences from the evidence before it, but its authority is not unlimited. *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, 817 N.E.2d 880, ¶ 34. The knowledge that the commission seeks to impute to McBee involves what can be a

3

complicated exception to *Griffith*'s general principle that "work" entails remuneration. The *Ford* exception is not intuitive, nor is it within the realm of the average claimant's experience, dealing as it does with unpaid activities within the context of a secondary business enterprise.

**{¶ 11}** Mindful of these considerations, our examination of the evidence reveals nothing from which we can infer that McBee recognized that the activities in question could be construed as work. If McBee was asked at the hearing whether he knew that work included some unpaid activities, the commission's order does not reflect it. The relevant portions of the order focused exclusively on why McBee's activities were work, not on whether he knew that they were work for purposes of TTC eligibility. As for Mrs. McBee, the order does not cite any testimony from her, so there is nothing to review.

**{¶ 12}** Ultimately, there is no evidence that McBee knew that his unpaid activities constituted work that would preclude TTC. Thus, there is no evidence that he knowingly misled the commission or the bureau. Absent such knowledge, a fraud declaration cannot stand.

**{¶ 13}** The judgment of the court of appeals is affirmed.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, CUPP, and MCGEE BROWN, JJ., concur.

LANZINGER, J., not participating.

_____

John F. Potts, for appellee.

Michael DeWine, Attorney General, and Sandra E. Pinkerton, Assistant Attorney General, for appellant.

_____