[Cite as *State ex rel Seibert v. Indus. Comm.*, 2016-Ohio-8335.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Kenneth J. Seibert, | : | |
| Relator, | : | |
| v. | : | No. 15AP-402 |
| Industrial Commission of Ohio, and Richard Cyr, Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

---

## D E C I S I O N

Rendered on December 22, 2016

---

**On brief:** *Becker & Cade,* and *Dennis A. Becker,* for relator.

**On brief:** *Michael DeWine*, Attorney General, and *Lisa R. Miller,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, J.

{¶ 1} Relator, Kenneth J. Seibert, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order finding relator had been overpaid permanent total disability ("PTD") compensation, and further determining that the overpayment should be recouped under the fraud provisions of the Ohio Workers' Compensation statute.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate, who rendered the appended decision, including findings of fact and conclusions of law. The magistrate concluded that

the commission did not abuse its discretion in finding relator had engaged in sustained remunerative employment while receiving PTD compensation and in declaring an overpayment beginning March 26, 2009. The magistrate further concluded, however, that the commission abused its discretion in finding relator had committed fraud; the magistrate therefore recommended this court grant a writ of mandamus ordering the commission to vacate its finding of fraud.

{¶ 3} Relator has filed an objection to the magistrate's decision arguing that the magistrate erred in finding he was engaged in sustained remunerative employment effective March 26, 2009. The commission has also filed objections, arguing that the magistrate erred in failing to limit review of the fraud finding to the issue of whether there was some evidence to support the commission's determination that relator committed fraud by concealing his employment at Lebanon Raceway. The commission also challenges, with respect to the fraud determination, the magistrate's application of the holding in *State ex rel. McBee v. Indus. Comm.,* 132 Ohio St.3d 209, 2012-Ohio-2678.

{¶ 4} The record, as more fully set forth in the magistrate's findings of fact, indicates that the Special Investigations Department ("SID") of the Ohio Bureau of Workers' Compensation ("BWC") initiated an investigation of relator in October 2013. The BWC subsequently filed with the commission a C-86 motion asserting it had obtained evidence that relator was working for Jim Davis at the Lebanon Raceway during periods in which relator had applied for and was awarded PTD compensation. The motion requested the commission declare an overpayment, terminate relator's PTD benefits, and to also declare relator had committed fraud. The matter came for hearing before a commission staff hearing officer ("SHO"), who granted BWC's motion, declaring an overpayment of all PTD compensation paid to relator beginning March 26, 2009, and also making a finding of fraud.

{¶ 5} In reviewing the record evidence, the magistrate noted that agents with SID conducted investigative interviews with various individuals, including relator. During his interview, relator acknowledged owning two horses, and that he had worked at the Lebanon Raceway for the past four to five years. Relator and Jim Davis owned horses together, and relator kept his horses at Davis' barn. Davis would often waive relator's barn rental fees and other costs in exchange for relator helping Davis with his horses.

{¶ 6}  Agents also interviewed Davis who stated that relator was at the barn three to five days a week for approximately four hours each day; Davis indicated he would have to pay someone $100 to $125 per week to perform the work relator performed for him. Davis and relator would also split the winnings from the horse they both owned.  Agents also learned that relator had a "horses/owner license" from 2008, 2009, 2010, and 2012.

{¶ 7}  Under Ohio law, PTD compensation "cannot be paid when there is evidence of (1) actual sustained remunerative employment, (2) a physical ability to do sustained remunerative employment, or (3) activities so medically inconsistent with the claimed disability as to impeach the medical evidence underlying the award." *State ex rel. Lowe v. Cincinnati, Inc.,* 124 Ohio St.3d 204, 2009-Ohio-5864, ¶ 30, citing *State ex rel. Lawson v. Mondie Forge,* 104 Ohio St.3d 39, 2004-Ohio-6086, ¶ 16.

{¶ 8}  In the present case, the commission determined under the first element above that relator had engaged in sustained remunerative employment while receiving PTD compensation.  As noted by the magistrate, the commission found that relator and Davis had engaged in a "barter system," and relator's reduced fees were akin to wages and constituted sustained remunerative employment.

{¶ 9}  In his objection, relator challenges the commission's determination that he engaged in sustained remunerative employment beginning in March 2009.  According to relator, there is a lack of evidence that he engaged in any type of bartering relationship with Davis prior to 2012.

{¶ 10} The magistrate, however, addressed this contention, finding that the commission relied on more than relator's ownership of one or more horses to determine he had engaged in sustained remunerative employment during the period in question. More specifically, the commission relied on evidence that relator received money on March 26, 2009 as prize earnings for a horse he owned, as well as relator's statements that he had been involved in the horse training/racing business since the late 1980s and that he had known Davis since that time.  The magistrate also cited relator's own statements to investigators that he had worked at the Lebanon Raceway for the past four to five years.  The magistrate further noted evidence that relator had an ownership interest in at least one horse since 1998, as well as statements by both relator and Davis regarding services relator had provided for other individuals.

{¶ 11} During the hearing before the SHO, relator testified that prize earnings for horses he owned were retained by Davis to help pay his bills. Relator further acknowledged that, in exchange for his activities at the barn, he was not required to pay his stable rental fees. Relator agreed that the activities he did for others (i.e., grooming, harnessing, jogging, bathing, and feeding horses) involved services the owners would normally have to pay someone to do. Relator testified that he had performed work for Davis the past three to four years, and that he had performed services for another individual (Doug Stovall) prior to that. He also acknowledged receiving the purse check in March 2009. During the hearing, one of the SID investigators testified that relator received five subsequent checks for purse winnings over a four-year period, including two other checks he received in 2009. The investigator further testified that relator owned a total of three horses during the period 2009 through 2014. Part of the evidence before the SHO also included copies of relator's bank records from December 2007 to April 2014.

{¶ 12} On review, we find that the record contains some evidence to support the commission's determination that relator engaged in sustained remunerative employment as of March 26, 2009. Accordingly, relator's single objection is overruled.

{¶ 13} We next consider the commission's objections, in which it argues the magistrate erred by failing to limit review of the fraud finding to the issue of whether there was some evidence to support the commission's determination that relator committed fraud by concealing his employment at Lebanon Raceway. The commission further objects to the magistrate's application of *McBee* in determining that the commission's finding of fraud constituted an abuse of discretion.

{¶ 14} In *Gaines v. Preterm-Cleveland, Inc.,* 33 Ohio St.3d 54, 55 (1987), the Supreme Court of Ohio set forth the elements of an action in fraud as follows:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

{¶ 15} In the instant case, the SHO, in considering the above elements, found that: (1) relator "was informed he was not permitted to work" while receiving PTD compensation by means of the BWC's PTD "contact letters," application for PTD compensation, and "the EBT debit card or direct deposit authorization form," (2) relator had a duty to disclose to BWC that he was training horses at the Lebanon Raceway as a groomer/racetrack worker and failed to do so, and such concealment enabled him to receive benefits to which he would not otherwise be entitled, (3) but for relator's concealment of his improper conduct, BWC would not have made the improper payments of PTD compensation, (4) despite the information provided by BWC to relator on his PTD contact letters, the application for PTD compensation, and EBT debit card or direct deposit authorization forms, relator failed to disclose he was working while receiving PTD benefits, (5) BWC justifiably relied on the representations of relator and the concealment of his activities, and (6) BWC suffered injury by paying benefits to relator when he was not entitled to such compensation.

{¶ 16} The magistrate, in addressing the issue of fraud, noted in part that the evidence cited by the commission in support of its fraud finding "includes relator's contact letters, application for compensation, EBT debit card or direct deposit authorization forms, and the fact that relator did not state that he was working. * * * While one could argue that this is always enough, here, all the other evidence indicates a lack of intent." (Mag. Decision at ¶ 58.) The magistrate also cited the Supreme Court's decision in *McBee* for the proposition that a knowing misrepresentation requires a showing that a claimant was aware that his or her activities could be considered work.

{¶ 17} The commission argues that the magistrate, while acknowledging the evidence the commission relied on in support of its fraud finding, reweighed the evidence (i.e., citing "other evidence" indicating a lack of intent) and held the commission to a standard higher than "some evidence." The commission further argues that the decision in *McBee,* cited by the magistrate, is distinguishable from the facts of this case.

{¶ 18} As noted above, the commission found that relator had a duty to disclose to BWC that he was engaged in work activity and failed to do so. The evidence in this case included contact letters from BWC to relator inquiring whether he was currently "working or have you worked since you were granted PTD benefits?" Relator answered no to these

annual inquiries and signed the letters. During the hearing before the SHO, relator acknowledged he was aware he was not permitted to perform work while receiving PTD benefits. He further acknowledged performing services for individuals at the horse barn that would normally require payment. The commission cited the above evidence in reaching its fraud determination.

{¶ 19} Under Ohio law, " '[w]here the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus will not lie.' " *State ex rel. Collins v. Indus. Comm.,* 10th Dist. No. 04AP-31, 2004-Ohio-7201, ¶ 5, quoting *State ex rel. Kroger Co. v. Stover,* 31 Ohio St.3d 229, 232 (1987). Further, "[d]etermination of the weight and credibility of evidence belongs to the commission alone." *Id.* Here, even accepting that there was other evidence on which the commission could have made a contrary finding, the issue is whether there was some evidence to support the commission's finding of fraud. On review, we agree with the commission that the evidence it cited and relied on constitutes some evidence to support its determination that relator engaged in fraud by concealing his work activity when he had a duty to disclose it.

{¶ 20} We also agree with the commission that the decision in *McBee* does not, under the facts of this case, provide a basis for reversal of its fraud determination. Under the facts of *McBee*, the claimant, who helped his wife with her business, was not paid for his services, and the record contained no evidence that the claimant was aware that his unpaid activities could be considered work. In determining whether the claimant had engaged in fraud, the Supreme Court noted the "absence of remuneration factors into this issue." *Id.* at ¶ 8.

{¶ 21} By contrast, in the present case, and as recognized by the magistrate, the commission "found that relator's reduced fees were akin to wages and constituted sustained remunerative employment." (Mag. Decision at ¶ 54.) Furthermore, "[t]he commission has substantial leeway in interpreting and drawing inferences from the evidence in the record." *State ex rel. Perez v. Indus. Comm.,* ____ Ohio St.3d ____, 2016-Ohio-5084, ¶ 26. Based on the evidence previously discussed above, including relator's acknowledgement that his activities at the Lebanon Raceway over a number of years involved the type of services an owner would normally pay someone to perform, we find

that the commission, in weighing the evidence before it, did not abuse its discretion in concluding that relator was aware his activities could be considered work.

{¶ 22} Based on this court's review, we find no abuse of discretion by the commission in its determination that relator was overpaid PTD compensation because he was engaged in sustained remunerative employment, nor do we find an abuse of discretion by the commission in ordering such funds to be recouped under the statutory fraud provision.  Accordingly, we sustain the commission's objections.

{¶ 23} Following this court's independent review, we adopt the magistrate's findings of fact, but reject the magistrate's conclusions of law to the extent indicated in this decision.  Relator's objection is overruled, the commission's objections are sustained, and relator's request for a writ of mandamus is hereby denied.

*Relator's objection overruled;*
*Commission's objections sustained;*
*writ of mandamus denied.*

TYACK and KLATT, JJ., concur.

———————————

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Kenneth J. Seibert, | : | |
| Relator, | : | |
| v. | : | No. 15AP-402 |
| Industrial Commission of Ohio, and Richard Cyr, Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

## M A G I S T R A T E ' S  D E C I S I O N

### Rendered on January 29, 2016

*Becker & Cade,* and *Dennis A. Becker,* for relator.

*Michael DeWine,* Attorney General, and *Lisa R. Miller,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 24} Relator, Kenneth J. Seibert, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order finding that relator had been overpaid permanent total disability ("PTD") compensation, and further determining that the overpayment should be recouped under the fraud provisions of the Ohio Workers' Compensation statute.

**Findings of Fact:**

{¶ 25} 1. Relator has two workers' compensation claims, one from 1990 and the other from 1991. Those claims have been allowed for the following conditions:

> 90-34867: Strain Lumbosacral.
>
> 91-101931: Lumbar strain; aggravation of spondylosis lumbar spine; spondylolisthesis at L5; major depressive disorder; psychogenic pain.

{¶ 26} 2. Following a hearing before a staff hearing officer ("SHO") on February 5, 2007, relator was granted PTD compensation based solely on the allowed conditions in his claim and without the necessity of considering the non-medical disability factors.

{¶ 27} 3. On October 17, 2013, the Special Investigations Department ("SID") of the Ohio Bureau of Workers' Compensation ("BWC") initiated an investigation when it discovered that relator had an active groomer/owner license for 2013.

{¶ 28} 4. Special agents conducted surveillance at Lebanon Raceway from April through June 2014. During that time, agents observed the following activity: relator wearing riding attire and a helmet, maneuvering a sulky into and out of the barn, jogging horses around the track, removing the sulky from a horse, removing the riding harness from a horse, walking the horse to the shower stall, hosing off a horse, and pushing and dumping a wheel barrel outside of the barn.

{¶ 29} 5. On June 18, 2014, SID agents conducted the following interviews:

(1) Relator himself told agents he owns two horses and had worked at Lebanon Raceway for the past four to five years. Relator explained that he and Jim Davis owned horses together and that relator's horses were kept in Davis' barn. Relator explained that his rental fees to Davis, as well as other costs, were often waived in exchange for him helping Davis with Davis' horses. Relator explained that he typically runs four to five horses each day for three miles then bathes the horses and feeds them.

{¶ 30} Relator stated that his doctor knew about his work activity and that his former attorney also knew. Relator indicated that he told his attorney that he wanted to train horses and asked if the BWC could help him obtain a trainer's license. Relator informed his attorney that he did not want to remain on workers' compensation. Ultimately, relator hired a new attorney. Relator indicated that he was unsure if he told his new attorney about his activities. Relator told the agents that he could make $40 a

day per horse for training.  Relator indicated that he was physically able to work with the horses and he wanted to pursue that career.

{¶ 31} (2) Agents also interviewed Jim Davis who explained that he gave relator a one-half ownership in a horse named Edna Lou and did not pay relator for any of the services he performed in the barn because relator owed Davis for his part of the upkeep for the horse.  Davis also explained that Edna Lou raced ten times in 2014 and earned approximately $2,000. Davis explained that he and relator would split whatever amounts from Edna Lou's winnings remained after giving five percent to the driver and five percent to the trainer.

{¶ 32} Davis rents all the stalls in barn 11 and currently stables 12 horses.  Davis indicated that relator was at the barn three to five days a week for approximately four hours each day.  Davis indicated that he would have to pay someone $100 to $125 per week to perform the work relator performed for him.

{¶ 33} (3) The agents also interviewed Brent Hopper who confirmed that relator owned Edna Lou and might also own two other horses.  Hopper indicated that relator helped out in barn 11 for the past two years.  This included jogging the horses six days a week, cleaning their stalls, and spraying down the horses.

{¶ 34} While interviewing Hopper, relator approached and asked Hopper if anything else needed to be done and further told Hopper to tell the agents the truth and that this was all a misunderstanding.

{¶ 35} Later that day, Hopper called the agents and told them that he forgot he had written one check to relator in 2004 in the amount of $500.  Hopper indicated that the check was for a horse sold in which he had part ownership and was to say thank you to relator for helping out the last couple years.

{¶ 36} (4) The agents also interviewed Doug Stovall who owned horses in barn 6. The agents showed Stovall a copy of a check written to relator, dated February 13, 2010, in the amount of $25.  Stovall was not able to tell the agents why he wrote that check to relator and indicated that it may have been payment for relator bringing him a trailer. Stovall also indicated that relator might clean a stall or two in barn 11, but was unsure whether or not Davis paid him.

{¶ 37} (5) The agents also interviewed Stacey Nisonger who had horses in barn 14. Nisonger indicated that relator helped with the horses in barn 11, cleaned stalls, harnessed, and jogged the horses. She indicated that his work was sporadic and that following stomach surgery, they hired someone to perform that work.

{¶ 38} The agents showed Nisonger two checks, one dated March 15, 2013 and the other dated March 22, 2013, both to relator in the amount of $40 each with the word "Paddock" written in the memo. Nisonger indicated those checks were payments to relator for transporting horses to a race.

{¶ 39} (6) The agents also interviewed relator's physician of record, Dennis J. Ward, who indicated that he became aware relator was grooming/training horses at Lebanon Raceway in August 2014. Dr. Ward also indicated that, despite the activities relator was performing, he still believed he was permanently disabled.

{¶ 40} (7) The agents subpoenaed relator's bank records for the period December 2007 to April 2014. Although the stipulation of evidence only includes 1 out of 18 pages, the report prepared by SID agents indicates that relator had cash deposits totaling $7,270.02 and check deposits totaling $2,879.08 for a total of cash and check deposits from December 2007 through April 2014 in the amount of $10,149.10. The SID report also indicates that there were several deposits for his wife's business, Pure Romance, but the report does not indicate the amount of those deposits. However, on the one sheet included in the stipulation of evidence, approximately 86 percent of the entries from December 2007 through July 2009 relate to Pure Romance.

{¶ 41} (8) The agents contacted the Ohio Racing Commission and learned that relator had a horses/owner license from 2008, 2009, 2010, and 2012. In the years between 2008 and 2012, a specific person is listed as the trainer of each particular horse named and relator is not listed as the trainer.

{¶ 42} 6. On October 3, 2014, the BWC filed a motion to terminate relator's PTD compensation, declare as overpaid all compensation paid beginning March 26, 2009, and asking the commission to make a finding of fraud.

{¶ 43} 7. A hearing was held before an SHO on January 7, 2015. The SHO granted the BWC's motion and declared that all PTD compensation paid to relator beginning March 26, 2009 and continuing had been overpaid. The SHO chose this specific date as

the date relator returned to work. The SHO also specifically noted that March 26, 2009 "reflects the receipt of payment from Lebanon Trotting Club, Inc. as prize earnings for winnings of a horse owned by Mr. Seibert." The SHO noted that, while relator was not paid directly for the work he performed for Davis, the two men had a barter system whereby relator performed work activities in exchange for a reduction in the fees relator would otherwise owe for stabling his horse(s) in barn 11.

{¶ 44} The SHO also made a finding of fraud noting: that relator had an obligation to inform the BWC he was working as a groomer/horse track worker at Lebanon Raceway training horses; that his concealment enabled him to receive benefits to which he would not otherwise be entitled; that, but for his concealment, the BWC would not have made those payments; that his failure to notify the BWC while routinely receiving information from the BWC; that he was required to report any work activity evidenced his intent to mislead the BWC, that the BWC justifiably relied on his misrepresentation; and the BWC was injured as a result.

{¶ 45} 8. Relator has filed the instant mandamus action arguing that the commission abused its discretion by finding that he was overpaid PTD compensation beginning March 26, 2009 and abused its discretion by finding fraud.

Conclusions of Law:

{¶ 46} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 47} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of

discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 48} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 49} PTD compensation is prohibited when there is evidence of (1) actual sustained remunerative employment, (2) physical ability to perform sustained remunerative employment, or (3) activities that are so medically inconsistent with the disability evidence that they impeach the medical evidence underlying the award. *See State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086.

{¶ 50} In the present case, the commission specifically found that relator had been engaged in sustained remunerative employment. The commission determined that March 26, 2009, the date relator received money from Lebanon Trotting Club, Inc., as prize earnings for a horse he owned, was the date he began engaging in sustained remunerative employment. The commission also indicated that it relied on relator's statement, "I have been involved in the horse training/racing business since the late 1980's. I have known Jim Davis since then as well."

{¶ 51} Relator asserts that the commission abused its discretion by using the wrong standard to determine that his activities constitute income generating activity arguing that "[t]he mere ownership of a horse by an injured worker does not necessarily bar receipt of PTD." (Relator's brief, 7.) Relator argues further that the commission

abused its discretion by using March 26, 2009, the date of his first prize winnings, as the date he began performing sustained remunerative employment.

{¶ 52} The magistrate agrees that ownership of a horse and the prize winnings associated with the ownership of that horse does not constitute some remunerative employment. However, in this particular case, the magistrate finds that the commission did not abuse its discretion because the commission relied on more than relator's ownership of one or more horses. The BWC's report indicates that relator has had an ownership interest in at least one horse since 1998. The SHO also relied on statements made by both relator and Jim Davis, and the fact that relator had provided services for others too. In the BWC's SID report, it was noted that Davis made the following statements:

> SEIBERT had been around the barns since he could remember. * * * SIEBERT previously owned other horses in other barns. * * * Davis advised that he believed SEIBERT may have helped in barns #6 or #7 in the past. * * * Davis reported that he had known of SEIBERT for a long time.

{¶ 53} The commission determined that relator and Davis had a "barter system" in which relator worked his horse and other horses in exchange for a reduction of the cost of boarding his horse.

{¶ 54} Contrary to relator's assertion, the SHO relied on more than his mere ownership of a horse as evidence that he was involved in some sustained remunerative employment. The commission found that relator's reduced fees were akin to wages and constituted sustained remunerative employment. As such, the magistrate finds that the commission did not abuse its discretion when it made this determination and that March 26, 2009 was a reasonable date to select.

{¶ 55} Relator also contends that the commission abused its discretion when it made its finding of fraud. For the reasons that follow, this magistrate agrees.

{¶ 56} In order to establish the prima facie elements of fraud, the BWC must show: (1) a representation where there is a duty to disclose, concealment of fact; (2) which is material to the transaction at hand; (3) made falsely, with the knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) a

justifiable reliance upon the representation on concealment; and (6) a resulting injury proximately caused by the reliance.

{¶ 57} In *State ex rel. McBee v. Indus. Comm.,* 132 Ohio St.3d 209, 2012-Ohio-2678, after the Supreme Court of Ohio noted that fraud required a knowing misrepresentation of a material fact, the court stated that, in order to qualify as a knowing misrepresentation, it must be shown that the claimant was aware that his activities could be considered work. The court noted further that in mandamus, the court must determine whether the evidence cited in the commission's order demonstrates such an awareness.

{¶ 58} In the present case, the evidence cited by the commission includes relator's contact letters, application for compensation, EBT debit card or direct deposit authorization forms, and the fact that relator did not state that he was working. This is the only evidence the commission cites. While one could argue that this is always enough, here, all the other evidence indicates a lack of intent. Specifically, as a general rule, when faced with these investigations, the majority of claimants outright lie to the investigators. Even if they begin telling the truth, as soon as they realize they are being investigated, claimants generally retract their earlier statements. Further, it is not uncommon to see in the record that a claimant being accused of fraud tries to influence other witnesses to back their story.

{¶ 59} In the present case, relator never changed his story. He acknowledged that he had been helping out at the race track for years and that his attorney was aware of his activities. Further, the BWC never asserted that relator's activities were inconsistent with his restrictions; the BWC only argued that this was sustained remunerative employment. Relator never received a paycheck.

{¶ 60} It is clear from the record that relator has owned one or more horses for several years before 2009. The record is also clear that relator exercised and washed his own horses. If he would only have washed and exercised his own horses, it appears the BWC would not be challenging his award of PTD compensation. While he was at the race track exercising his own horses, relator did also exercise horses for other individuals, including Jim Davis, who did not pay him for his services. Instead, Davis waived the

stable fees for relator's horse(s).  The record simply does not support a finding of fraud and the magistrate finds the commission abused its discretion in this regard.

{¶ 61} Based on the foregoing, it is this magistrate's decision that relator was engaged in sustained remunerative employment since his stable fees were waived. However, the magistrate also finds that the commission did abuse its discretion when it found fraud.  As such, it is this magistrate's decision that this court should grant a writ of mandamus ordering the commission to vacate its finding of fraud.


/S/ MAGISTRATE_____
STEPHANIE BISCA


## NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).