[Cite as *State ex rel. Moffitt v. Indus. Comm.*, 2017-Ohio-7414.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Milton Moffitt, | : | |
| Relator, | : | |
| | : | No. 16AP-396 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio and Enterprise Roofing & Sheet Metal Company, | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on August 31, 2017

**On brief:** *Law Office of Stanley R. Jurus,* and *Robert B. Bumgarner,* for relator. **Argued:** *Robert B. Bumgarner.*

**On brief:** *Michael DeWine,* Attorney General, and *Amanda B. Brown,* for respondent Industrial Commission of Ohio. **Argued:** *Amanda B. Brown.*

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, J.

{¶ 1} Relator, Milton Moffitt, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its October 22, 2015 order that grants the August 7, 2015 motion of the administrator of the Ohio Bureau of Workers Compensation ("bureau") for the exercise of continuing jurisdiction over the July 14, 2015 order of its staff hearing officer ("SHO") that awarded permanent total disability ("PTD") compensation to relator, and to enter an order that denies the administrator's motion and reinstates the July 14, 2015 order of the SHO awarding PTD compensation.

{¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended that this court deny relator's writ of mandamus. Relator has filed two objections to that decision, and we will address them together.

{¶ 3} Relator argues in his first objection that the magistrate erred when he found that the SHO's misstatement suggests a conclusion that is inconsistent with PTD, as it is instead simply one of numerous findings made by the SHO in her order. As part of the factual findings in the SHO's order, the SHO stated that relator "continues" to work up to 500 hours per year in his capacity as a roofer. Relator contends that this information came from the December 5, 2013 office note of Dr. David Seymour; thus, relator asserts, the SHO's finding should have said "[a]s of December 5, 2013," relator "continued" to work 500 hours per year. (Relator's brief at 11.)  The commission used the SHO's finding to conclude that the SHO's award of PTD was not consistent with PTD because relator was continuing to work 500 hours per year. Relator terms the SHO's factual finding as a dictation error and an inadvertent and harmless misstatement.

{¶ 4} Relator argues in his second objection that the magistrate erred when he found that the commission did not abuse its discretion in exercising continuing jurisdiction as the magistrate did not address the issue of whether the SHO's dictation error was an inadvertent, harmless, and irrelevant misstatement that was not grounds for continuing jurisdiction. Relator points to several decisions from this court in which we have found that inadvertent, harmless, and irrelevant misstatements are not grounds for continuing jurisdiction or a mandamus action.

{¶ 5} We disagree with relator's portrayal of the SHO's finding as a mere dictation error or inadvertent and harmless statement. The magistrate here found that the SHO's order "strongly suggests a conclusion that is inconsistent with permanent total disability." (Mag. Decision at ¶ 51.)  We cannot find the commission abused its discretion in finding the SHO's statement that relator "continues" to work 500 hours per year is inconsistent with a finding of PTD; thus, its exercising of continuing jurisdiction was proper.  Read strictly as written, the SHO's finding and the definition of

PTD clearly conflict. There is simply no evidence in the order or record that this finding was inadvertent or a mere clerical error. Furthermore, with regard to the cases cited by relator that involved misstatements of fact by an SHO, those cases are inapposite to the facts here. In those cases, the SHO's misstatements were either not independently preclusive of PTD or irrelevant to the ultimate determination of PTD. To the contrary, in the present case, a claimant who works 500 hours per year cannot be said to be permanently and totally disabled by definition. For these reasons, we find relator's arguments without merit and overrule his objections.

{¶ 6} Accordingly, after an examination of the magistrate's decision, an independent review of the record, pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections. We adopt the magistrate's findings of facts and conclusions of law. Relator's request for a writ of mandamus is denied.

*Objections overruled; writ of mandamus denied.*

DORRIAN, J., concurs.
LUPER SCHUSTER, J., dissents.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Milton Moffitt, | : | |
| Relator, | : | |
| v. | : | No. 16AP-396 |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Enterprise Roofing & Sheet Metal Company, | : | |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

**Rendered on March 9, 2017**

*Law Office of Stanley R. Jurus,* and *Robert B. Bumgarner,* for relator.

*Michael DeWine,* Attorney General, and *Amanda B. Brown,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 7} In this original action, relator, Milton Moffitt, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its October 22, 2015 order that grants the August 7, 2015 motion of the administrator of the Ohio Bureau of Workers' Compensation ("bureau") for the exercise of continuing jurisdiction over the July 14, 2015 order of its staff hearing officer ("SHO") that awarded permanent total disability ("PTD") compensation to relator, and to enter an order that denies the administrator's motion and reinstates the July 14, 2015 order of the SHO awarding PTD compensation.

Findings of Fact:

{¶ 8}   1. On May 27, 1997, relator injured his lower back while employed as a roofer for respondent, Enterprise Roofing & Sheet Metal Company, a state-fund employer.  The injury occurred when relator endeavored to move a heavy pail of rubber.

{¶ 9}   2.  The industrial claim (No. 97-422974) is allowed for "herniated nucleus pulposus L2-3 with bulging disc at L4-S1 and L3-4 radiculopathy."

{¶ 10}  3.  The record shows that, as early as December 18, 2012, relator was treated for his lower back injury by orthopedist David S. Seymour, M.D.  On that date, in an office note, Dr. Seymour wrote:

> Milton is doing relatively well. He works as a roofer, and the techniques they use require warmer temperatures, so he has been laid off. While this has occurred, his back pain has improved significantly. He has had improvement in what had been increasing exacerbation of left SI area, buttocks, posterolateral thigh discomfort, nothing below the knee.

{¶ 11}  4. On August 22, 2013, relator again saw Dr. Seymour who, in an office note, states:

> Milton is doing relatively well. He continues to work out on a regular basis and use his inversion table. He has been able to, in a sense, retire from his roofing job but he still works up to 500 hours. He has the option to work when he can and he enjoys working. He is not having radiating discomfort.

{¶ 12}  5. On December 5, 2013, relator again saw Dr. Seymour who, in an office note, states:

> Milton continues to manage his lumbar degenerative disc disease and back discomfort. He is retired but continues to work at roofing jobs up to his 500 hour maximum. He has been having some increased discomfort at night, particular in the left hip but not radiating down into his leg. He can find a position of comfort if he rolls about somewhat.

{¶ 13}  6. On March 25, 2014, relator again saw Dr. Seymour who, in his office note, states:

> He is having lower back discomfort radiating into his left buttocks, thigh, and into the lower leg. It has been progressively more severe and harder for him to work. His walking distance has decreased.

{¶ 14} 7. On May 27, 2014, relator again saw Dr. Seymour who, in an office note, states:

> Milton has had much more back pain then the usual radiating into his left greater than right buttocks and lower leg. His walking ability continues to decline. He has a feeling of weakness in his legs and he had a great deal of difficulty getting through the zoo [sic]. No change in bowel or bladder function.
>
> On physical examination, he continues to have excellent strength and deep tendon reflexes. He has pain behavior when standing, which he did not have previously. He continues with a general flat affect.
>
> **RADIOLOGY REPORT** Review of his MRI shows multilevel degenerative disc disease, facet arthropathy, and spinal stenosis. * * *
>
> Impression: A 53-year-old male who has severe degenerative spinal stenosis at multiple levels. Over the years, he has worked as a roofer diligently despite poor architecture of his spine. He no longer can continue the roofing or even ambulate functionally.

{¶ 15} 8. Documents from the Social Security Administration indicate that relator began receiving social security disability benefits beginning June 2014.

{¶ 16} 9. On January 20, 2015, at relator's request, he was examined by orthopedic surgeon Richard M. Ward, M.D. In his two-page narrative report, Dr. Ward opined:

> Taking into account the allowances for the injury that occurred as described on 5-27-1997 and my physical findings, it is my opinion that Mr. Moffitt cannot return to sustained remunerative employment. I base this opinion upon the fact that there is no combination of sit, stand, walk option that would add up to a normal eight hour work day for him. He also has severe postural limitations, limitations on his ability to lift and carry and he cannot use his legs to operate foot controls. I did fill out a Physical Capacities Evaluation to the best of my ability, again taking into account the specific allowances for the injury that occurred as described on 5-27-1997 and my physical findings. This does indicate that Milton Moffitt, Jr, cannot return to sustained remunerative employment. Unfortunately, I do believe Mr. Moffitt has a permanent impairment and

> therefore, in my opinion, should be awarded permanent total disability. This opinion is certainly based upon a reasonable medical probability.

{¶ 17} 10. On February 18, 2015, relator filed an application for PTD compensation. In support, relator submitted the January 20, 2015 report of Dr. Ward.

{¶ 18} 11. On April 15, 2015, at the commission's request, relator was examined by Thomas E. Forte, D.O. In his six-page narrative report, Dr. Forte opines:

> Mr. Moffitt has already undergone physical therapy, injections, and the medication regimen has been optimized, and he reports that there are no planned specialty consultations and no planned surgical or invasive procedures. Therefore, in this examiner's opinion, the allowed physical conditions in the claim have stabilized to the point that no major medical change can be expected, despite any continuing medical treatment or rehabilitative programs in which the injured worker may participate. Thus, in this reviewer's opinion, the claimant has reached maximum medical improvement for the current listed allowed conditions in the claim.
>
> * * *
>
> The PHYSICAL STRENGTH RATING form is completed and enclosed. There is limited capability for lifting, standing, repetitive bending, leaning, and prolonged standing and sitting, and these limitations are necessary [sic] due to the allowed back conditions in the claims addressed in this report, as the claimant has physical examination documentation of restricted and painful lumbar motion.

(Emphasis sic.)

{¶ 19} 12. On April 15, 2015, Dr. Forte completed a "Physical Strength Rating" form provided by the commission. On the form, Dr. Forte indicated by his mark that relator is capable of "sedentary work."

{¶ 20} Under "FURTHER limitations, if indicated," and in the space provided, Dr. Forte wrote: "The claimant reports difficulties with bending, lifting, leaning, prolonged standing, prolonged sitting, and states he is not interested in sexual activity."

{¶ 21} 13. By letter dated June 3, 2015, the commission's Chief Medical Advisor Robin G. Stanko, M.D., requested an addendum from Dr. Forte. The letter requested:

Thank you for your report dated 4/15/15 regarding the above Injured Worker. After review of your report, the Industrial Commission has determined it is in need of additional information.

Please specify the lifting capacity of the [Injured Worker] in pounds and indicate how long the [Injured Worker] can sit and stand in terms of hours.

{¶ 22} 14. On June 9, 2015, Dr. Forte issued his addendum, stating:

In this reviewer's opinion, as relates only to the allowed physical conditions in the claim for which the claimant was examined, the claimant's lifting capacity is 10 pounds on a frequent basis, and he is able to sit for one hour increments for 8 hours a day, and stand for 30 minutes at a time for a total of 4 hours a day.

{¶ 23} 15. Earlier, on May 31, 2015, at relator's request, Vocational Consultant Molly S. Williams reviewed the April 15, 2015 report of Dr. Forte. Adopting Dr. Forte's report, Williams opined:

I have reviewed and formally adopt the factual findings as previously stated above. However, when all of the disability factors are correctly identified, stated, and considered: an individual unable to perform his customary past relevant work as a Roofer, both as he performed it and as it is normally performed within the national economy; an individual whose currently closely approaching advanced age (age fifty to fifty-four); an individual becoming of advanced age (age fifty-five or over) within the next eleven days; an individual with no transferable skill(s); and an individual not expected to make a vocational adjustment to other work based upon his allowed condition, as assessed by The Industrial Commission's Specialist, Thomas E. Forte, D.O., it is obvious the claimant is permanently and totally disabled.

{¶ 24} 16. On July 14, 2015, the PTD application was heard by an SHO. Relator appeared with his counsel. No one appeared for the employer. Staff counsel appeared on behalf of the administrator.

{¶ 25} 17. Following the July 14, 2015 hearing, the SHO mailed an order on July 25, 2015 that grants the PTD application. The SHO's order explains:

Permanent total disability compensation is awarded from 01/20/2015 based upon the medical report submitted by the Injured Worker from Richard M. Ward, M.D., dated

01/20/2015, who opines the Injured Worker, as a result of the allowed physical conditions in this claim of sprain lumbar region, herniated nucleus pulposus at L2-3 with bulging disc at L4-S1 and L3-4 radiculopathy, to be incapable of returning to any form of gainful employment.

* * *

Staff Hearing Officer finds that the Injured Worker has submitted the medical report of Dr. Ward in support of the permanent total disability application. Dr. Ward has opined the allowed physical conditions to be permanent having reached maximum medical improvement and [states] as a result of those conditions the Injured Worker is incapable to returning to any for[m] of gainful employment. Dr. Ward states that there is no combination of sit, stand, walk option that would add up to the Injured Worker being capable of a normal eight hour work day. He states that the Injured Worker has severe postural limitations, limitations on his ability to lift and carry and states that he can not use his legs to operate foot controls. Dr. Ward further states the Injured Worker continues to have severe low back pain that radiates into his left low extremity with involuntary muscle spasm and marked loss of lumbar spine motion.

The Staff Hearing Officer finds that the Injured Worker was examined at the request of the Industrial Commission by Thomas E. Forte, D.O., M.S., on 04/15/2015, regarding the allowed physical conditions in this claim. Dr. Forte states that the Injured Worker's allowed physical conditions are permanent having reached maximum medical improvement and states that as a result of those conditions the Injured Worker is capable of performing sedentary employment. Dr. Forte states that the Injured Worker has limited capability for lifting, standing, repetitive bending, leaning and prolonged standing and sitting based upon the Injured Worker's physical examination documenting restricted and painful lumbar motion. Dr. Forte has completed a physical strength rating form opining the Injured Worker to be capable of sedentary work which mean[s] exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one third to two thirds of the time) to lift, carry, push, pull or otherwise move objects. Sedentary work involved [sic] sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are

sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

Staff Hearing Officer finds that the Injured Worker's allowed physical conditions are permanent having reached maximum medical improvement. Staff Hearing [Officer] further finds that the Injured Worker is 55 years old with a 12th grade education and a 30 year work history as a residential and commercial construction roofer. Staff Hearing Officer finds that the Injured Worker is retired through his union and received Social Security Disability beginning July of 2014. Staff Hearing Officer further finds that the Injured Worker has not been involved in any vocational rehabilitation and continues to work up to 500 hours per year in his capacity as a roofer.

The Staff Hearing Officer finds that the Injured Worker has submitted the vocational report by vocational consultant Molly S. Williams. Staff Hearing Officer finds that Ms. Williams has stated that the Injured Worker is closely approaching advanced age, possesses a high school education and has the limited ability to read, write, and perform basic math skills. She states that the Injured Worker's job duties as a construction roofer is considered to be skilled work. She also states that * * * the Injured Worker's work history is considered to be skilled, but, is a lesser degree of skill and people in those positions are not expected to do more complex jobs than they have actually performed. She states that the Injured Worker has no transferable skills and that she is unable to identify jobs to which the Injured Worker's skills as a roofer would allow him to work in a sedentary position. She states that considering the Injured Worker's age, work history and limited education that he cannot return to his former position of employment and that he is to be considered [incapable] of returning to [any] form of gainful employment.

It is the finding and order of the Staff Hearing Officer that the Injured Worker, as a result of both the physical and vocational factors opined by Dr. Ward and vocational consultant Molly S. Williams is incapable to returning to [any] form of sustained remunerative employment. It is therefore the finding and order of the Staff Hearing Officer that the Injured Worker's permanent total disability application filed 02/18/2015, is granted.

> This order is based upon the vocational review by Molly S. Williams dated 05/31/2015 and the medical report of Dr. Ward, dated 01/20/2015.

{¶ 26} 18. On August 7, 2015, the administrator moved the three-member commission for reconsideration of the SHO's order of July 14, 2015 that was mailed July 25, 2015.

{¶ 27} 19. By letter dated August 11, 2015, relator's counsel opposed the request for reconsideration.

{¶ 28} 20. On August 29, 2015, the three-member commission mailed an interlocutory order, stating:

> It is the finding of the Industrial Commission the Administrator has presented evidence of sufficient probative value to warrant adjudication of the Request for Reconsideration regarding the alleged presence of a clear mistake of fact in the order from which reconsideration is sought, and a clear mistake of law of such character that remedial action would clearly follow.
>
> Specifically, it is alleged the Staff Hearing Officer erred in finding the Injured Worker continues to work, but retired and began receiving Social Security Disability benefits in July 2014. It is further alleged the Staff Hearing Officer erred in not considering the Injured Worker's lack of attempts at vocational rehabilitation. It is finally alleged the Staff Hearing Officer erred in relying on the vocational report of Molly Williams when she did not provide an opinion on the Injured Worker's ability to be re-trained.
>
> The order issued is vacated, set aside, and held for naught.
>
> Based on these findings, the Industrial Commission directs the Administrator's Request for Reconsideration, filed 08/07/2015, be set for hearing to determine whether the alleged clear mistakes of fact and law as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction.
>
> In the interest of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hear the merits of the underlying issue(s). The Industrial Commission will thereafter issue an order on the matter of continuing

> jurisdiction under R.C. 4123.52. If authority to invoke continuing jurisdiction is found, the Industrial Commission will address the merits of the underlying issue(s).

{¶ 29} 21. On October 22, 2015, the matter was heard by the three-member commission. The hearing was recorded and transcribed for the record.

{¶ 30} 22. Following the October 22, 2015 hearing, the commission mailed an order on December 16, 2015 that exercised continuing jurisdiction over the SHO's order of July 14, 2015 that had awarded PTD compensation. The commission vacated the SHO's order awarding PTD compensation and proceeded to the merits of the PTD application.

{¶ 31} On the merits, the commission finds that the allowed conditions do not render relator permanently and totally disabled. In the alternative, the commission finds that PTD compensation is precluded by a voluntary abandonment of the workforce.

{¶ 32} It should be noted here that relator only challenges the commission's exercise of continuing jurisdiction over the SHO's order awarding PTD compensation. That is, relator does not challenge the commission's determination that the industrial injury does not render him permanently and totally disabled. Also, relator does not challenge the commission's determination that he voluntarily abandoned the workforce.

{¶ 33} Regarding the exercise of continuing jurisdiction, the commission's order explains:

> [I]t is the decision of the Industrial Commission the Administrator has met his burden of proving the Staff Hearing Officer order, issued 07/25/2015, contains clear mistakes of law of such character that remedial action would clearly follow. Specifically, the Staff Hearing Officer mistakenly awarded permanent total disability compensation when she also found the Injured Worker continued to work. Additionally, the Staff Hearing Officer failed to analyze the Injured Worker's vocational factors, instead reciting the findings made by Vocational Evaluator Molly Williams, without adopting those findings as her own. Therefore, the Industrial Commission exercises continuing jurisdiction pursuant to R.C. 4123.52 * * * in order to correct these errors.

{¶ 34} 23. On May 24, 2016, relator, Milton Moffitt, filed this mandamus action.

<u>Conclusions of Law</u>:

{¶ 35} The issue is whether the commission abused its discretion in determining that the SHO's order of July 14, 2015 contains a clear mistake of law in awarding PTD compensation while stating "the Injured Worker * * * continues to work up to 500 hours per year in his capacity as a roofer."

{¶ 36} Finding that the July 14, 2015 order of the SHO presents a clear mistake of law as correctly identified by the commission in its October 22, 2015 order, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

### Pertinent Administrative Rules

{¶ 37} Ohio Adm.Code 4121-3-34 provides the commission's rules for the adjudication of PTD applications. Ohio Adm.Code 4121-3-34(D) provides guidelines of adjudication of PTD applications.

{¶ 38} Ohio Adm.Code 4121-3-34(D)(1) provides:

> (b) If, after hearing, the adjudicator finds that the injured worker is engaged in sustained remunerative employment, the injured worker's application for permanent and total disability shall be denied.

{¶ 39} Ohio Adm.Code 4121-3-34(D)(2) provides:

> (a) If, after hearing, the adjudicator finds that the medical impairment resulting from the allowed condition(s) in the claim(s) prohibits the injured worker's return to the former position of employment as well as prohibits the injured worker from performing any sustained remunerative employment, the injured worker shall be found to be permanently and totally disabled, without reference to the vocational factors listed in paragraph (B)(3) of this rule.
>
> (b) If, after hearing, the adjudicator finds that the injured worker, based on the medical impairment resulting from the allowed conditions is unable to return to the former position of employment but may be able to engage in sustained remunerative employment, the non-medical factors shall be considered by the adjudicator.
>
> The non-medical factors that are to be reviewed are the injured worker's age, education, work record, and all other factors, such as physical, psychological, and sociological, that

are contained within the record that might be important to the determination as to whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed. (Vocational factors are defined in paragraph (B) of this rule).

(c) If, after hearing and review of relevant vocational evidence and non-medical disability factors, as described in paragraph (D)(2)(b) of this rule the adjudicator finds that the injured worker can return to sustained remunerative employment by using past employment skills or those skills which may be reasonably developed through retraining or through rehabilitation, the injured worker shall be found not to be permanently and totally disabled.

## Permanent Total Disability: Basic Law

{¶ 40} PTD is defined as the inability to perform sustained remunerative employment. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987).

{¶ 41} In *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, the Supreme Court of Ohio set forth three separate criteria for the termination of PTD compensation based on prior case law. Payment of PTD compensation is inappropriate where there is evidence of (1) actual sustained remunerative employment (*State ex rel. Kirby v. Indus. Comm.*, 97 Ohio St.3d 427, 2002-Ohio-6668); (2) the physical ability to do sustained remunerative employment (*State ex. rel. Schultz v. Indus. Comm.*, 96 Ohio St.3d 27, 2002-Ohio-3316); or (3) activities so medically inconsistent with the disability that they impeach the medical evidence underlying the award. *See State ex rel. Timmerman Truss, Inc. v. Indus. Comm.*, 102 Ohio St.3d 244, 2004-Ohio-2589; *Lawson* at ¶ 16.

## Temporary Total Disability: Basic Law

{¶ 42} It may be helpful to compare permanent total disability with temporary total disability ("TTD").

{¶ 43} TTD is the inability to return to the former position of employment. *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982). TTD compensation is prohibited to one who has returned to work. R.C. 4123.56(A).

{¶ 44} Activities medically inconsistent with the inability to return to the former position of employment bar TTD compensation regardless of whether the claimant is paid. *State ex rel. Ford Motor Co. v. Indus. Comm.*, 98 Ohio St.3d 20, 2002-Ohio-7038, ¶

23, citing *State ex rel. Parma Community Gen. Hosp. v. Jankowski*, 95 Ohio St.3d 340, 2002-Ohio-2336.   Activities that are not medically inconsistent, however, bar TTD compensation only when a claimant is remunerated for them.   *Id.*   Moreover, even sporadic employment can bar TTD compensation.   *Ford* at ¶ 23, citing *State ex rel. Blabac v. Indus. Comm.*, 87 Ohio St.3d 113 (1999).

{¶ 45} Activities that are not minimal and that directly generate income for a separate entity may be considered work and may disqualify a claimant from receiving TTD compensation even when the claimant is not paid.   *State ex rel. McBee v. Indus. Comm.,* 132 Ohio St.3d 209, 2012-Ohio-2678, ¶ 7.   (Claimant helped his wife with her business, but he was not paid for his services.)

## Continuing Jurisdiction

{¶ 46} Continuing jurisdiction is not unlimited.   Its prerequisites are (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal.   *State ex rel. Royal v. Indus. Comm.*, 95 Ohio St.3d 97 (2002).

{¶ 47} The presence of one of these prerequisites must be clearly articulated in any commission order seeking to exercise reconsideration jurisdiction, i.e., continuing jurisdiction.  *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, ¶ 15.  This means that the prerequisite must be both identified and explained.  *Id.*

## Analysis

{¶ 48} In its interlocutory order mailed August 29, 2015, the commission identifies three potential mistakes of law.   At issue here is the following identification of a potential mistake of law:

> Specifically, it is alleged the Staff Hearing Officer erred in finding the Injured Worker continues to work, but retired and began receiving Social Security Disability benefits in July 2014.

{¶ 49} In its order of October 22, 2015, the commission specifically identified the clear mistake of law previously identified in the interlocutory order:

> Specifically, the Staff Hearing Officer mistakenly awarded permanent total disability compensation when she also found the Injured Worker continued to work.

{¶ 50} When the SHO states in her order of July 14, 2015 that "the Injured Worker * * * continues to work up to 500 hours per year in his capacity as a roofer," it is strongly suggested that relator is actually performing sustained remunerative employment or has the physical ability to perform sustained remunerative employment.  *Lawson* at ¶ 16. This observation is made by the magistrate without reference to Dr. Seymour's office visit notes contained in the record but not identified in the SHO's order of July 14, 2015.

{¶ 51} Thus, on its face, the SHO's order of July 14, 2015 strongly suggests a conclusion that is inconsistent with permanent total disability.  Given this analysis, it is clear that the SHO's order of July 14, 2015 contains a clear mistake of law on which the commission correctly exercised its continuing jurisdiction.

{¶ 52} According to relator, the statement in the SHO's order of July 14, 2015 that "the Injured Worker * * * continues to work up to 500 hours per year in his capacity as a roofer" is premised on Dr. Seymour's December 5, 2013 office note which states:  "He is retired but continues to work at roofing jobs up to his 500 hour maximum."

{¶ 53} It can be observed that the December 5, 2013 office visit occurred over a year prior to the February 18, 2015 filing of relator's PTD application.  Thus, in actuality, the December 5, 2013 office note is not necessarily inconsistent with relator's claim that he was permanently and totally disabled as of his January 20, 2015 examination by Dr. Ward.

{¶ 54} Here, relator argues that the SHO's order of July 14, 2015 should instead state "the injured worker continued to work up to 500 hours per year in his capacity as a roofer as of December 5, 2013."  (Relator's Brief at 11.)  Clearly, relator cannot rewrite the SHO's order of July 14, 2015 in order to remove the clear mistake of law.

{¶ 55} Based on the foregoing analysis, the magistrate concludes that the commission did not abuse its discretion in determining that the SHO's order of July 14, 2015 contains a clear mistake of law.

{¶ 56} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

**Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).**